**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**MIDLAND/ODESSA DIVISION**

ALMONDNET, INC. and INTENT IQ, LLC,

Plaintiffs,

v.

SNAP, INC.,

Defendant.

Civil Action No. 7:25-cv-00181-DC-DTG

**PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS**

**TABLE OF CONTENTS**

I. INTRODUCTION .......... 1

II. LEGAL STANDARD .......... 1

III. ARGUMENT .......... 2

A. Direct infringement is properly pled for the ’198 Patent. .......... 2

B. Direct infringement is properly pled for the ’398 Patent. .......... 5

C. Indirect infringement is properly pled for the ’146 Patent. .......... 6

D. Plaintiffs do not oppose dismissal of any discrete claims for pre-suit willful or induced infringement. .......... 9

E. Leave to amend would not be futile. .......... 10

IV. CONCLUSION .......... 11

# TABLE OF AUTHORITIES

**Cases**

*Aatrix Software, Inc. v. Green Shades Software, Inc.*,
882 F.3d 1121 (Fed. Cir. 2018). ........................................ 10

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)........................................ 1

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007)........................................ 1, 2

*Bowlby v. City of Aberdeen, Miss.*,
681 F.3d 215 (5th Cir. 2012). ........................................ 1

*Connelly v. Lane Const. Corp.*,
809 F.3d 780 (3d Cir. 2016........................................ 1

*In re Bill of Lading Transmission & Processing Sys. Pat. Litig.*,
681 F.3d 1323 (Fed. Cir. 2012) ........................................ 2, 3, 4, 9

*Vervain, LLC v. Micron Tech., Inc.*,
No. 6:21-CV-00487-ADA, 2022 WL 23469 (W.D. Tex. Jan. 3, 2022) ................................ 4, 7

## I. INTRODUCTION

In its motion to dismiss, Defendant Snap, Inc. ("Snap") asks the Court to dismiss Plaintiffs AlmondNet, Inc.'s ("AlmondNet") and Intent IQ, LLC's ("Intent IQ") (collectively, "Plaintiffs") claims for failure to adequately plead direct infringement. Dkt. 38. ("Mot."). However, Snap's motion ignores the fact that a plaintiff need not prove its case at the pleading stage. Each of Snap's rationales for dismissal is based on an allegation that the evidence cited with the complaint does not *prove* infringement; Snap largely fails to address whether (much less establish that) infringement is not at least a plausible inference based on the factual evidence and allegations of the complaint.

## II. LEGAL STANDARD

When considering a Rule 12(b)(6) motion to dismiss, the Court must accept as true all factual allegations in the complaint and view them in the "light most favorable to the plaintiff." *Bowlby v. City of Aberdeen, Miss.*, 681 F.3d 215, 219 (5th Cir. 2012). "[A] well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of [the alleged] facts is improbable, and that a recovery is very remote and unlikely." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007) (citation omitted).

To survive a motion to dismiss, a complaint need only contain "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citations omitted). *Iqbal* makes clear that even "extravagantly fanciful" or "chimerical" allegations, so long as they are not conclusory, are entitled "to the presumption of truth." *Id.* at 681; *see also Connelly v. Lane Const. Corp.*, 809 F.3d 780, 789 (3d Cir. 2016) ("Put another way, Twombly and Iqbal expressly declined to exclude even outlandish allegations from a presumption of truth except to the extent they resembled a 'formulaic recitation of the elements of a claim' or other legal conclusion.") (cleaned up). The standard "simply calls for enough facts

to raise a reasonable expectation that discovery will reveal evidence of [the claim]." *Twombly*, 550 U.S. at 545.

Additionally, "[n]othing in *Twombly* or its progeny allows a court to choose among competing inferences as long as there are sufficient facts alleged to render the non-movant's asserted inferences plausible." *In re Bill of Lading Transmission & Processing Sys. Pat. Litig.*, 681 F.3d 1323, 1340 (Fed. Cir. 2012).

## III. ARGUMENT

### A. Direct infringement is properly pled for the '198 Patent.

Snap's only argument regarding the '198 Patent is that Plaintiffs have allegedly failed to show that "Snap receive[s] a notice that 'results from and signifies a first television advertisement presented using the first set-top box that corresponds to the first set-top box identifier.'" Mot. 7.[1]

However, Snap fails to show that Snap receiving the claimed notification is not a plausible inference based on the pleaded facts. *See Bill of Lading*, 681 F.3d at 1340 ("Nothing in *Twombly* or its progeny allows a court to choose among competing inferences as long as there are sufficient facts alleged to render the non-movant's asserted inferences plausible."). For example, the chart accompanying the complaint shows that Snap receives information "from [Snap's] advertisers and partners" describing "[y]our activity on the websites and platforms of our advertisers and partners." Dkt. 2-2 at 4.[2] Snap's argument implicitly contends that a user's "activity on the websites

---

[1] Notably, this is a ***different*** theory than Snap presented in its original motion to dismiss. *See* Dkt. 13 at 8–10 (presenting a now-abandoned "divided infringement" theory of non-infringement, where the infringement theory allegedly "relies on the actions of various separate entities such as the 'online user interface' and 'set-top box').

[2] Plaintiffs' page numbering refers to the page numbering at the bottom of the page, if a page number is listed.

and platforms" of advertisers and partners excludes ad-viewing activity via a set-top box, but Snap provides no factual basis for this implicit assertion.

Regarding the requirement that the notification provide information regarding activity from a "set-top box," Snap does not dispute that it receives information about the "TV, film, and video they like to watch." Dkt. 32-2 at 5. Snap also receives information when "you search for a movie on a website that shares data with Snap." *Id.* While Snap does not appear to publicize precisely which websites share data with Snap, an imminently plausible inference is that the referenced websites on which users "search for a move" include websites that present content including advertisements to a set-top box. Thus, it is more than plausible that Snap receives information from content presented to a set-top box.

Regarding the requirement that the notification include information about an ***advertisement*** directed to a set-top box, Snap complains that the cited evidence regarding Snap's collection of data about user activity does not explicitly state that the user activity includes ad-viewing activity. But ad-viewing activity is indisputably within the umbrella of "your activities off Snapchat" (*see* Dkt. 32-2 at 5), such as when a user views or clicks on an advertisement displayed on Hulu. Snap's collection of ad-viewing activity is thus, at very least, a plausible inference from the cited evidence. *See Bill of Lading*, 681 F.3d at 1340. Snap complains that "Plaintiffs must plead facts supporting this limitation ***and not simply parrot the claim language***" (Mot. at 8),[3] but this ignores the fact that specific evidence (not mere parroting or recitation of claim language) is provided in the complaint regarding the types of activity that Snap collects, which plausibly include receiving notifications regarding ads directed to set-top boxes.

---

[3] All emphases to quotations herein are added unless otherwise specified.

Snap also cites *Vervain* for the proposition that direct infringement cannot be pled "by merely articulating why it is plausible that the accused product practices the prior art." Mot. 8–9 (citing *Vervain, LLC v. Micron Tech., Inc.*, No. 6:21-CV-00487-ADA, 2022 WL 23469, at *5 (W.D. Tex. Jan. 3, 2022)). But *Vervain* involved a case where both "the relevant prosecution history and the Complaint suggest[ed] that" the disputed limitations at issue "capture the point of novelty." 2022 WL 23469 at * 5. Here, Snap makes no such allegation, other than to conclusorily assert that the claimed notice "is a material limitation of the asserted method claim." *See* Mot. 8 (providing no evidence in support of this assertion). Nor does Snap explain how Plaintiff's infringement allegations merely plead practicing of the prior art. While Snap *does* assert that unspecified prior art existed that targeted advertisements "based on 'user, viewer, or customer behavior'" (Mot. 8), Snap makes no showing that it is *specifically* receiving the claimed notification in limitation 1(a) (as opposed to other limitations, such as, *e.g.*, the "associat[ion] without using personally identifiable information" recited in limitation 1(c)) that constitutes the point of novelty. Certainly, Snap provides no reason why the Court should draw this inference ***against*** the non-moving party, contrary to Federal Circuit precedent. *See Bill of Lading Transmission & Processing Sys. Pat. Litig.*, 681 F.3d 1323, 1340 (Fed. Cir. 2012).

The plausibility of the complaint is further confirmed by additional evidence from Snap's own website. For example, the complaint itself makes clear that the Snap Pixel can be used to provide Snap with data about "action on [advertiser] website(s)." Dkt. 23-2 at 6. And Snap's website makes clear that the Pixel will pass data including an "IP address" (which is included within a device identifier—*see* Dkt. 23-1 at 2:10–11), as well as information about "advertisement clicks" and "advertisement views." *See* Ex. 1 at 2, 3. Thus, where an advertiser such as Netflix or

Hulu has implemented a Snap Pixel, Snap will receive the required notification resulting from and signifying a television advertisement presented via a set-top box.

In sum, the complaint itself sufficiently pled facts from which a plausible inference can be drawn that all limitations are practiced. But even if that were not the case, leave to amend should be granted to provide additional evidence establishing the plausibility of Snap's direct infringement.

**B. Direct infringement is properly pled for the '398 Patent.**

Snap's arguments as to the '398 Patent ignore the infringement theory presented with the complaint. Specifically, Snap alleges that the complaint "fails to explain how a second device might be 'indicated at the time of the action' by an electronic identifier that is electronically associated with the first identifier." Mot. 10.

However, the chart accompanying complaint explicitly alleges that the claimed association between the first and second device identifier—which is used to cause the action (e.g., serving an ad or an attribution event) to be taken with respect to the second device—is established "by comparing IP addresses that the first and second devices used to connect to the Internet." Dkt. 32-4 at 5–6 (analysis for limitation 13(b)); *see also id.* at 6, 8, 10 (providing supporting evidentiary citations indicating that Snap receives the IP addresses needed to create such an association). Snap does not even ***address*** this allegation, much less explain why that allegation is not plausible. Thus, Snap does not dispute the plausibility of the allegation that Snap *does* associate device identifiers of both a first and second device by comparing the IP addresses that those devices used.

And it is also plausible that the "second device identifier" (which is associated with a first device identifier via a comparison of IP addresses) is "an electronic identifier" that "indicate[s]" the "second device" as the claim requires (*see* '398 Patent, limitation 13(a)), because a device identifier identifies (or indicates) a device. Thus, it is more than plausible that the second identifier

(associated with the first identifier) indicates the second device, as claimed, and that it would continue to do so at the time an advertising or attribution action is made with respect to the first device.

Finally, it is plausible that the action taken with respect to the second device is "based on first electronic profile data associated with an electronic identifier of a first device" as claim 13 requires. Again, Snap does not dispute that it is plausible that Snap associates identifiers of the first and second devices. And Snap collects information from devices, such as "your activities off Snapchat or other services on which [Snap] serve[s] ads." Dkt. 32-4 at 4. Given that Snap collects profile data from a first device, and also associates the first device identifier with a second device identifier, it is plausible that Snap does so for the purpose of basing advertising or attribution events with respect to the second device on profile information gathered from the first device. *See* Dkt. 32-4 at 3 ("Each type of information we collect or receive has an impact on our ads system….").

### C. Indirect infringement is properly pled for the '146 Patent.

Snap's arguments regarding the alleged deficiency of Plaintiffs' allegations regarding the '146 Patent present three arguments numbered "First," "Second," and "Third." Mot. 13, 15. As explained below, each of these separately listed arguments fails because they ignore the actual allegations of the complaint (that Snap induces infringement by soliciting infringing bids from third-party ad partners).

Snap's "first" argument is that Plaintiffs allegedly do not "explain[] how Snap's servers 'instruct' its advertising partners to infringe." Mot. 13. However, the complaint ***does*** allege that "Snap solicits bids using a protocol such as, or similar to, the open-source real-time bidding protocol which invites advertising partners to provide bid responses including a bid price value."

*See* Dkt. 32-6 at 4. The complaint chart further makes clear exactly how responding to such a solicitation (i.e., request or instruction) directly infringes. *See generally id.*

Although Snap does not actually dispute that it solicits bids in the alleged manner (or that ad partners' responses to such bids directly infringes), Snap contends that the particular factual allegation in the complaint is entitled to no weight because (1) it is preceded by the words "on information and belief" and (2) "Plaintiffs cite no facts to support this allegation." Mot. 13. Snap is incorrect, however, that this allegation is unsupported by facts. For example, Snap's own documents show that "third-party ad networks… serve ads on Snapchat." Dkt. 32-2 at 12. The ads must be served with ***some*** protocol, so it is a natural conclusion that the ads are served using the popular real-time bidding ("RTB") protocol. *See* Ex. 2 ("In recent years, OpenRTB has gained significant attention and popularity due to its profound impact on the ever-evolving digital advertising landscape."). This understanding is further supported by the fact that Snap's third-party advertising partners operate demand-side platforms which participate in real-time bidding. *See* Dkt. 32-6 at 13–24 (evidence of that the listed third-party advertising partners include demand-side platforms that engage in such bidding).

Furthermore, Snap does not dispute that the OpenRTB protocol involves precisely the type of bid solicitation that would constitute an instruction for ad partner bidders to submit bids in an infringing manner, as detailed in the claim chart accompanying the complaint. Accordingly, the complaint plausibly alleges how Snap instructs ad partners to infringe (by soliciting infringing bid responses). And while Snap cites to *Vervain* for the proposition "Snap uses an open-source protocol to solicit bids from its advertisers to practice the claimed invention's point of novelty is legally insufficient to state a claim for indirect infringement" (Mot. 13), *Vervain* does not support Snap's proposition. *Vervain* held that "a complaint nakedly alleging that the accused product practices the claimed invention's point of novelty will rarely suffice." 2022 WL 23469, at *5. But unlike in *Vervain*

in which there was evidence from both the Complaint and prosecution history regarding what the "point of novelty" ***was*** (*id.*), Snap's motion does not even identify what it believes the "point of novelty" to be. And here, the complaint does not "nakedly alleg[e]" that Snap solicits bids, but provides specific evidence (including evidence from Snap's website and the websites of Snap's ad partners) that Snap provides information to advertising partners who operate real-time bidding systems. *See, e.g.*, Dkt. 32-6 at 12–24.

Snap's "second" argument implies that because only two screenshots are provided from Snap's own website, the remainder of the cited evidence is simply irrelevant. *See* Mot. 13–14 (addressing only "[t]hese two images"). On this basis, Snap contends that the complaint does not provide evidence regarding Snap's intent to cause others to infringe, or regarding Snap's instructions to ad partners regarding how to infringe. *See id.* In doing so, Snap fails to even *address* the evidence from exemplary "third-party advertising partners" disclosed on Snap's website showing that they use demand side platforms to place infringing bids. *See* Mot. at 13–14 (alleging that "***[t]hese two images*** cannot plausibly establish" indirect infringement, and "***[t]hese two images*** do not 'instruct' Snap's third party advertisers on how to infringe," without even attempting to address the alleged solicitation of bid responses according to the OpenRTB protocol which the evidence shows Snap's ad partners utilize). And although Snap does not dispute that Snap provides "an IP address" and "Mobile Ad ID" to ad partners, Snap does not even *allege* any reason Snap "send[s] these third party advertising partners IP address [and] Mobile Ad IDs" *other than* to induce its ad partners to bid on advertising space in an infringing manner. Mot. 14. While Snap asserts in conclusory fashion that the complaint allegations are "is insufficient as a matter of law" (*id.*), Snap does not explain ***why*** it is not plausible that provision of this information to ad partners that operate real-time bidding systems does not induce those ad partners to submit bids in an infringing manner.

Snap's "third" argument is that Plaintiffs do not sufficiently disclose any 'active steps' Snap takes to encourage others' infringement." Mot. 15. But as shown above with respect to Snap's "first" and "second" arguments, it is *at least* plausible that Snap solicits bids from Snap's ad partners to place advertisements into Snap's ad space in view of the cited evidence and allegations. And contrary to Snap's attorney argument, Plaintiffs ***do*** offer "facts [and] explanation to describe how Snap solicits bids and 'invites advertising partners to provide bid responses including a bid price value'" (Mot. 15)—by "using a protocol such as, or similar to, the open source real-time bidding protocol… so that Snap can choose which advertising partner it should choose to provide an advertisement for a given ad opportunity." Dkt. 32-6 at 4. Again, Snap does not even dispute this factual allegation, much less explain why it is not plausible based on the alleged facts.

In sum, Snap's arguments ignore the applicable legal standard under which "all reasonable inferences" must be drawn "in favor of the non-moving party," and under which plaintiffs need not "prove [their] case at the pleading stage." *Bill of Lading*, 681 F.3d at 1339–40. Snap fails to even allege that its system *does not* operate in the alleged manner, much less explain why induced infringement is not a plausible inference.

**D. Plaintiffs do not oppose dismissal of any discrete claims for pre-suit willful or induced infringement.**

Snap contends that "Plaintiffs' allegations of pre-suit indirect and willful infringement should be dismissed" because pre-suit knowledge is not properly pled. Mot. 15–16. To extent the Court believes that "pre-suit" willful or induced infringement is a separate claim from "post-suit" infringement (rather than merely the time period during which infringement occurred and a factor in determining an appropriate remedy for infringement), Plaintiffs do not oppose dismissal of such claims, noting that leave to amend should be freely granted should facts arise showing an earlier

date of knowledge. *Cf.* Standing Order Governing Proceedings (OGP) 4.4—Patent Cases (W.D. Tex. Waco Division)[4] at §VII (allowing fact discovery regarding, and opportunity to plead, allegations of indirect and willful infringement after discovery).

**E. Leave to amend would not be futile.**

Snap presents numerous arguments regarding the sufficiency of the complaint. As discussed above, each of Snap's arguments lack merit. However, to the extent the Court finds *any* of these arguments compelling, leave to amend should be granted to cure any alleged deficiencies, which leave should be freely granted "when justice so requires." *Aatrix Software, Inc. v. Green Shades Software, Inc.*, 882 F.3d 1121, 1126 (Fed. Cir. 2018).

The *only* reason Snap alleges that dismissal *with prejudice* is appropriate is that Snap's motion challenges an *amended* complaint, such that "this is the second time Plaintiffs have failed to include facts sufficient to show how Snap infringes." Mot. 7 (the only argument regarding dismissal with "prejudice"); *see also id.* at 17 (the only other mention of dismissal with "prejudice," providing no rationale for such dismissal). But tellingly, Snap does not allege that its products *factually* work differently than the claims require (such that it would be futile to plead sufficient facts); Snap alleges only that the facts *currently* alleged in the complaint are insufficient.

Furthermore, it is unclear why the fact that this motion concerns an amended complaint would have any bearing on whether leave to amend is appropriate. Perhaps Snap's implicit argument is that, if Plaintiffs could not cure the deficiencies of the original complaint with an amended complaint, then amendment is presumably futile.

---

[4] *Available at* https://www.txwd.uscourts.gov/wp-content/uploads/2023/01/Standing-Order-Governing-Proceedings-Patent-Cases-01232024.pdf.

However, such logic has no bearing on the present motion to dismiss, because Snap presents *different* theories of dismissal as applied to the original complaint and the amended complaint. For instance, Snap's original motion alleged a lack of subject matter jurisdiction, a failure to join an indispensable party, and failure to allege direct infringement of the '198 Patent. Dkt. 13 at i (Snap's Table of Contents). The only argument that could potentially have any relationship to the instant motion is Snap's argument regarding direct infringement of the '198 Patent. However, even that requested relief presents a significantly different rationale, with Snap's original motion contending that "the elements of Claim 1 cannot all be performed by one party." Dkt. 13 at 8. In contrast, the current motion focuses on the factual question of whether one individual limitation is performed by Snap, with a significantly different rationale and no allegation that the claims "cannot" be performed by Snap as originally alleged. *Compare* Mot. 7–9, *with* Dkt. 13 at 8–10.

Thus, to the extent the Court believes any of Snap's grounds for dismissal have merit, Plaintiffs request leave to amend the complaint to address the alleged deficiencies.

## IV. CONCLUSION

For the foregoing reasons, Snap's Motion to Dismiss should be denied. And in the event the Court does find any portion of the amended complaint deficient based on any of Snap's arguments, Plaintiffs respectfully request leave to cure any deficiencies.

Dated: November 18, 2025

Respectfully submitted,

*/s/ James A. Milkey*

Reza Mirzaie
Marc A. Fenster
Brian D. Ledahl
Adam S. Hoffman
James A. Milkey
Philip X. Wang
James Tsuei
Jonathan Ma
Joshua M. Scheufler
Daniel B. Kolko
**RUSS AUGUST & KABAT**
12424 Wilshire Boulevard 12th Floor
Los Angeles, California 90025
Tel: 310-826-7474
Fax: 310-826-6991
rmirzaie@raklaw.com
mfenster@raklaw.com
bledahl@raklaw.com
ahoffman@raklaw.com
jmilkey@raklaw.com
pwang@raklaw.com
jtsuei@raklaw.com
jma@raklaw.com
jscheufler@raklaw.com
dkolko@raklaw.com

*Attorneys for Plaintiffs*
*AlmondNet, Inc. and*
*Datonics LLC*

**CERTIFICATE OF SERVICE**

I certify that on November 18, 2025, a true and correct copy of the foregoing document was electronically filed with the Court and served on all parties of record via the Court's CM/ECF system.

*/s/ James A. Milkey*
James A. Milkey