**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF TEXAS**
**MIDLAND/ODESSA DIVISION**

| | |
|---|---|
| **ALMONDNET, INC. and INTENT IQ, LLC,**<br><br>***Plaintiffs,***<br><br>**v.**<br><br>**SNAP INC.,**<br><br>***Defendant.*** | **Civil Action No. 7:25-cv-00181-DC-DTG**<br><br>**JURY TRIAL DEMANDED** |

# DEFENDANT SNAP INC.'S AMENDED MOTION TO TRANSFER VENUE UNDER 28 U.S.C. § 1404(a)

**TABLE OF CONTENTS**


I. INTRODUCTION ....... 1

II. STATEMENT OF FACTS ....... 2

A. Plaintiffs Have No Meaningful Connection to This District. ....... 2

B. Plaintiffs Accuses Technology Snap Developed in California. ....... 3

C. Snap's Headquarters and the Majority of Key Fact Witnesses and Evidence Are in CDCA. ....... 4

1. The Signals and Measurements Team Is Based in CDCA. ....... 4

2. The Delivery Platform Team Is Based in CDCA. ....... 5

3. Relevant Ads Quality Team Members Are Based in California. ....... 6

4. Other Relevant Snap Witnesses Are in CDCA. ....... 7

5. Snap's Texas Employees Are Not Relevant to This Case. ....... 7

D. The Locations of Relevant Third-Party Witnesses Favors CDCA. ....... 8

III. LEGAL STANDARD ....... 9

IV. ARGUMENT AND AUTHORITIES ....... 9

A. Venue is Proper in the Central District of California. ....... 10

B. The Private Interest Factors Strongly Favor Transfer. ....... 10

1. Attendance of Willing Witnesses Strongly Favors CDCA. ....... 10

2. Relative Ease of Access to Sources of Proof Strongly Favors CDCA. ....... 12

3. Availability of Compulsory Process Strongly Favors CDCA. ....... 13

4. All Other Practical Problems Are Neutral. ....... 14

C. The Public Interest Factors Favor Transfer to CDCA. ....... 14

1. Local Interests Favor CDCA. ....... 14

2. Court Congestion Favors CDCA. ....... 14

3. Familiarity with Governing Law and Conflicts of Law Is Neutral. ....... 15

V. CONCLUSION ....... 15

## TABLE OF AUTHORITIES

Page(s)

Cases


*In re Adobe Inc.*,
823 F. App'x 929 (Fed. Cir. 2020) ....................12

*AlmondNet, Inc v. Meta Platforms, Inc.*,
No. W-21-cv-00896-ADA, 2022 WL 22881848 (W.D. Tex. Nov. 29, 2022) ....................1, 3, 14

*AlmondNet, Inc. v. Samsung Elecs. Co.*,
No. W-21-cv-00891-ADA, 2022 WL 17574082 (W.D. Tex. Nov. 28, 2022) ....................1, 2, 14

*In re Apple, Inc.*,
581 F. App'x 886 (Fed. Cir. 2014) *("Apple I")* ....................10, 14

*In re Apple, Inc.*,
979 F.3d 1332 (Fed. Cir. 2020) ("*Apple II*") ....................11, 14

*In re Apple, Inc.*,
No. 2021-181, 2021 WL 5291804 (Fed. Cir. Nov. 15, 2021) (*"Apple III")* ....................13

*In re Apple, Inc.*,
No. 2022-128, 2022 WL 1196768 (Fed. Cir. Apr. 22, 2022) (*"Apple IV")* ....................12, 13

*Betty's Best, Inc. v. Yuyao Aggpo Elec. Tech. Co.*,
No. 1:22-cv-1078-RP, 2022 WL 17724417 (W.D. Tex. Dec. 15, 2022) ....................14, 15

*In re Genentech, Inc.*,
566 F.3d 1338 (Fed. Cir. 2009) ....................10

*HD Silicon Sols. LLC v. Microchip Tech. Inc.*,
No. W-20-cv-01092-ADA, 2021 WL 4953884 ....................14

*In re Juniper Networks, Inc.*,
14 F.4th 1313 (Fed. Cir. 2021) ....................10, 13, 14

*In re Nintendo Co., Ltd.*,
589 F.3d 1194 (Fed. Cir. 2009) ....................9, 10

*In re Pandora Media, LLC*,
No. 2021-172, 2021 WL 4772805 (Fed. Cir. Oct. 13, 2021) ....................12

*Parus Holdings, Inc. v. LG Elecs., Inc.*,
No. 6:19-cv-00432-ADA, 2020 WL 4905809 (W.D. Tex. Aug. 20, 2020) ....................14

*In re Samsung Elecs. Co., Ltd.*,
2 F.4th (Fed. Cir. 2021) ....................10

*In re TikTok, Inc.*,
85 F.4th 352 (5th Cir. 2023) .......... 13

*In re TS Tech USA Corp.*,
551 F.3d 1315 (Fed. Cir. 2008) .......... 15

*In re Volkswagen AG*,
371 F.3d 201 (5th Cir. 2004) ("*Volkswagen I")* .......... 9

*In re Volkswagen of Am., Inc.*,
545 F.3d 304 (5th Cir. 2008) ("*Volkswagen II"*) .......... 9, 13, 14, 15

Statutes

28 U.S.C. § 1400(b) .......... 10

28 U.S.C. § 1404(a) .......... 2, 9

Other Authorities

Fed. R. Civ. P. 45(c)(1)(A) .......... 13

Fed. R. Civ. P. 45(c)(1)(B) .......... 13

## I. INTRODUCTION

On September 12, 2025, Defendant Snap Inc. ("Snap") filed a Motion to Transfer this case to the Central District of California ("CDCA"). Doc. 30. Snap argued that CDCA was a more convenient forum than the Western District of Texas ("WDTX") because all seven Snap employees with the most knowledge regarding the accused products worked at Snap's offices in California, with the vast majority located at Snap's Global Headquarters in Santa Monica, California. *See* Doc. 30, pp. 15–16.[1] Snap also argued that to the extent additional Snap employees on the relevant teams responsible for the accused products were needed in the case, ninety-nine worked in California, with more than 60% working in CDCA. *Id.* In stark contrast, Plaintiff Intent IQ, LLC ("Intent IQ") had no connection to Texas. *Id.*, p. 6.

After Snap filed its Motion, Intent IQ and its affiliate, AlmondNet, Inc. (collectively, "Plaintiffs") *sua sponte* filed a First Amended Complaint ("FAC"). Doc. 32. The FAC added AlmondNet as a party and also asserted two new patents against Snap. *Id*. Because the FAC added a new plaintiff and because Plaintiffs assert additional patents, Snap files this Amended Motion.

Despite Plaintiffs' last minute addition of new allegations, CDCA is still clearly more convenient than WDTX. First, no relevant facts connect this case to WDTX. Both Intent IQ and AlmondNet are out-of-state New York plaintiffs, with no alleged connection to Texas. In fact, this District has already transferred two cases they filed to California. *AlmondNet, Inc v. Meta Platforms, Inc.*, No. W-21-cv-00896-ADA, 2022 WL 22881848 (W.D. Tex. Nov. 29, 2022); *AlmondNet, Inc. v. Samsung Elecs. Co.*, No. W-21-cv-00891-ADA, 2022 WL 17574082 (W.D. Tex. Nov. 28, 2022).

---

[1] Citations to docket entries identify the page number stamped onto the document at the top of the page by Pacer.

Second, Plaintiffs' newly asserted patents have only confirmed CDCA's convenience. The engineers responsible for the additional functionality now made relevant by the newly asserted '146 patent are also based there. Combined with the functionality previously accused, seven current Snap employees with significant information relating to all of the accused products are located in California, and one employee that recently left Snap is also based in California. In total, six of these eight witnesses are located in CDCA. Moreover, the vast majority of other Snap engineers working on the accused technology live in CDCA, Northern California, or elsewhere on the West Coast, with more than sixty engineers in CDCA alone.

Third, Snap's Austin office has no relationship to the subject matter of this case and is more than 300 miles away from the federal courthouse in Midland-Odessa. There are three lower-level Snap employees located in Texas that work in the areas of the accused functionality, but they support teams whose managers and/or engineers are located in California, primarily in CDCA where Snap's headquarters is located. Furthermore, Snap has identified at least sixteen prior art inventors and one former Snap employee in California that could be compelled to testify at trial in CDCA. No third-party witnesses are located in Texas.

Because CDCA is more convenient by any measure, Snap respectfully requests that the Court transfer this case to CDCA for the convenience of the parties and witnesses and in the interest of justice under 28 U.S.C. § 1404(a).

## II. STATEMENT OF FACTS

### A. Plaintiffs Have No Meaningful Connection to This District.

Plaintiffs' FAC does not identify any connection to Texas, much less this District. They are both Delaware corporations, with the same principal place of business in New York. Doc. 32 ¶ 2. There are two named inventors identified in the Asserted Patents. Docs. 32-1; 32-3; 32-5. One lives in Devora, Israel, and the other lives in New York. *Samsung Elecs.*, 2022 WL 17574082, at

*5 (transferring case to NDCA); *Meta Platforms*, 2022 WL 22881848, at *7 (transferring case to NDCA). Plaintiffs did not sue Snap in Texas because of any ties to it.

### B. Plaintiffs Accuses Technology Snap Developed in California.

Plaintiffs assert that Snap infringes United States Patent Nos. 10,321,198 ("'198 patent"), 8,677,398 ("'398 patent"), and 8,959,146 (the "'146 patent") (collectively, the "Asserted Patents"). Doc. 32 ¶¶ 1, 9–36. The '198 patent purportedly relates to targeting "online advertisements … based on observed viewing of or interacting with a television advertisement by a television viewer." Doc. 32-1 at 1:18–20. Plaintiffs generally accuse Snap of receiving data from third parties through Snap Pixel and Snap Conversions API ("Snap CAPI") and using that data for "Activity-Based Ads" and "Audience Targeting" in the Snapchat application. *E.g.*, Doc. 32 ¶ 11; Doc. 32-2, pp. 2, 4–6. For example, Plaintiffs' claim chart identifies "Data [Snap] Receive[s] From Others," "The Information Snap Collects and Receives About [Users] To Provide [Users] Ads," and "Information [Snap] receive[s] from [its] advertisers and partners." Doc. 32-2, pp. 2–5. Plaintiffs accuse these same systems of also infringing the '398 patent. Doc. 32 ¶ 21; Doc. 32-4, pp. 3–5. Similar to the '198 patent, the '398 patent purportedly relates to "online access and targeted delivery of advertisements" based on a user's online behavior. Doc. 32-3 at 1:17–18, 7:66–8:1.

Plaintiffs' allegations that Snap indirectly infringes the '146 patent are different. The '146 patent is entitled "Media Properties Selection Method and System Based On Expected Profit from Profile-Based Ad Delivery" and relates to facilitating "selection of media properties on which to display an advertisement." Doc. 32-5 at Abstract. Claim 1 recites "directing electronic advertisements" with the computer system automatically directing "indicia of a condition" to "a third-party server computer controlling advertising space on a second media property." *Id.* at Claim 1. Plaintiffs allege that Snap's "advertising partners" operate the required "computer system" and that Snap's systems are the alleged "third-party server computer" that controls "advertising space

on a second media property." Doc. 32-6, pp. 2, 5. The only Snap related documentation that Plaintiffs identify in the '146 patent's claim chart relate to Snap's "Third-Party Ad Networks" and "Third-Party Advertising Partners." Doc. 32-6, pp. 2–3, 13–14.

As discussed below, all of these technological systems (collectively, the "Accused Instrumentalities") were developed by engineers predominantly based in California and CDCA.

### C. Snap's Headquarters and the Majority of Key Fact Witnesses and Evidence Are in CDCA.

Snap's headquarters and principal place of business is in Santa Monica, California, which is in CDCA. Muralidharan Decl. ¶ 3. Snap currently has more than 1,400 employees who work in or near its Santa Monica headquarters, which is more than any other Snap office. *Id*. ¶ 22. At least three different engineering teams at Snap work on the Accused Instrumentalities: (1) the Signals and Measurements team; (2) the Ads Quality team; and (3) the Delivery Platform team. *Id.* ¶¶ 7, 13, 16; Venkatesh Decl. ¶¶ 3, 5. Additionally, there are other employees at Snap with relevant information, including data scientists and employees in Snap's finance and marketing departments. These employees are likewise predominately based at Snap's global headquarters in CDCA. The majority of key fact witnesses and evidence in this case are located there.

#### *1. The Signals and Measurements Team Is Based in CDCA.*

The Signals and Measurements engineering team at Snap is responsible for the development and implementation of: (1) Snap Pixel; (2) Snap CAPI; (3) the system that processes the information that Snap receives through Snap Pixel and Snap CAPI; and (4) the system that processes information that Snap receives when an advertiser directly uploads to Snap a list of its customers. Muralidharan Decl. ¶ 7. Plaintiffs accuse these systems of infringing the '198 and '398 patents. Doc. 32-2, pp. 2, 4–6, Doc. 32-4, pp. 2–5.

There are fifty-six engineers on the Signals and Measurements team. Muralidharan Decl. ¶ 8. A majority of the Signals and Measurements team is based in California. *Id.* ¶¶ 8, 10. Twenty-two engineers, including three managers, work at Snap's global headquarters in Santa Monica, California. *Id.* ¶ 8. Moreover, the specific engineers on the Signals and Measurements team with information most relevant to this case are all based in California. Hooman Javaheri and Arun Muralidharan are the two Engineering Managers responsible for overseeing and managing the Signals and Measurements team. *Id.* ¶¶ 4, 9. They both live and work in CDCA. *Id.* Mr. Javaheri has worked at Snap since January 2017. *Id.* ¶ 9. Mr. Muralidharan has worked at Snap since 2022. *Id.* ¶ 4. Both personally coded the system that processes the third-party information received via Snap Pixel and Snap CAPI. *Id*. ¶¶ 6, 9. Mr. Muralidharan also coded the system that processes customer lists received from Snap's advertisers. *Id.* ¶ 6.

Houshmand Shirani-Mehr is another Engineering Manager on the Signals and Measurements team. *Id*. ¶ 10. He is also responsible for the design, development, and implementation of the system that receives and processes information that third parties send to Snap through Snap Pixel and Snap CAPI. *Id*. Mr. Shirani-Mehr originally joined Snap in January 2017 and, like Mr. Javaheri, is also one of the original engineers who coded the system he now manages. *Id*. Mr. Shirani-Mehr lives and works in Palo Alto, California. *Id.*

### *2. The Delivery Platform Team Is Based in CDCA.*

Snap's Delivery Platform team is responsible for the development and implementation of the systems that deliver targeted ads to Snapchat users. *Id.* ¶ 15. More engineers on the Delivery Platform team work at Snap's Santa Monica headquarters than any other location. *Id.* ¶¶ 15–17. Thirty engineers, including three engineering managers on the Delivery Platform team, work in Santa Monica. *Id*. ¶ 16. A majority of the Delivery Platform team is also based in California. *Id*. In total, sixty-three percent of all Delivery Platform engineers work at Snap's offices in Santa

Monica or Silicon Valley. *Id.*

Murali Anagani is an engineer on the Delivery Platform team. He is responsible for and knows the most about the technological systems that process and compare (1) information received from the Signals and Measurements team with (2) an advertisers' requests for targeted ads. *Id.* ¶ 17. Plaintiffs accuse these systems of infringing the '198 and '398 patents. Doc. 32-2, p. 10 ("Snap's Accused Instrumentalities use the notification it received . . . [to] caus[e] the delivery of an advertisement"); Doc. 32-4, p. 2 ("Snap's Accused Instrumentalities use the . . . profile data . . . to automatically cause an action (e.g., direction of a targeted advertisement")). Mr. Anagani works at Snap's headquarters in CDCA. Muralidharan Decl. ¶ 17.

Anirudh Venkatesh, who also works in CDCA, is a Principal Engineer on Snap's Delivery Platform team. Venkatesh Decl. ¶¶ 3, 5–9. He has worked at Snap since 2014 and is responsible for and knows the most about Snap's Third-Party Ad Network integrations. *Id.* ¶¶ 3, 5. Plaintiffs accuse this functionality of infringing the '146 patent. Doc. 32-6, pp. 2–3. Although Snap stopped using Third-Party Ad Network integrations prior to Plaintiffs filing the FAC, twelve of the sixteen engineers Mr. Venkatesh worked with on this functionality did so in California, with eight working in CDCA. Venkatesh Decl. ¶¶ 7–8.

### *3. Relevant Ads Quality Team Members Are Based in California.*

The FAC also accuses Snap's Activity-Based Ads and Audience Targeting of infringing the '198 and '398 patents. Doc. 32 ¶ 11, 21. Certain engineers on Snap's Ads Quality team work on these systems. Muralidharan Decl. ¶ 13. Nine of the thirteen engineers that work on activity-based ads and audience targeting work in California. *Id.* Mohit Goyal was an engineer on the Ads Quality team who worked on this functionality. *Id.* ¶ 14. Mr. Goyal worked at Snap for more than six years. *Id*. Of all the engineers on the Ads Quality team, Mr. Goyal was the most tenured and knowledgeable regarding this functionality. *Id*. Mr. Goyal planned to leave his job at Snap before

Plaintiffs filed the FAC. *Id.* (dated 9/12/25)*;* Doc. 32 (dated 9/16/25). His last day at Snap was September 19, 2025. Mr. Goyal, however, plans to continue living in California. Muralidharan Decl. ¶ 14.

#### *4. Other Relevant Snap Witnesses Are in CDCA.*

Other Snap employees with potentially relevant information are in CDCA. Ruxuan Ouyang is a senior Data Scientist who supports the Signals and Measurements team. *Id*. ¶ 18. She joined Snap in 2018 and works at Snap's headquarters in CDCA. *Id*. Ms. Ouyang helped create the processes that Snap uses for analyzing data received by the Signals & Measurements team. *Id*. In addition to Ms. Ouyang, nine of the fifteen data scientists responsible for working with the Signals and Measurements and Ads Quality engineering teams also work at Snap's headquarters in CDCA, and one works at Snap's Palo Alto office. *Id*. ¶ 24.

Snap's financial and marketing functions are also primarily based in and managed from its Santa Monica headquarters. *Id*. ¶ 22. Unsurprisingly, the individual with the most relevant knowledge relating to the revenue that Snap receives from advertisers, Blake Thielmann, works at Snap's Santa Monica headquarters. *Id.* ¶ 23. Mr. Thielmann is a Senior Manager of Finance. *Id*. He has worked at Snap for seven years. *Id*.

#### *5. Snap's Texas Employees Are Not Relevant to This Case.*

In contrast to the significant connections to CDCA and California, none of Snap's employees in WDTX have unique information relevant to this case. *Id*. ¶¶ 25–29. Snap's only office in WDTX is located in Austin—319 miles from Midland, Odessa. Only thirty employees work there in total. None of the employees are on the Signals and Measurements team. *Id*. None worked on Snap's Third-Party Ad Network Integrations. Venkatesh Decl. ¶ 6. Snap is aware of only three individuals at its Austin office whose work marginally relates to the Accused Instrumentalities. Muralidharan Decl. ¶¶ 25–29.

First, an engineer on the Ads Quality team works at Snap's Austin office. *Id*. ¶ 26. He joined Snap in July 2022 and primarily works with engineers on the Ads Quality team in California. *Id.* He routinely travels to California for in-person meetings. *Id.* In contrast, no engineers on the Ads Quality, Signals and Measurements, or Delivery Platform teams travel to Texas. *Id*. Compared to Mr. Goyal, this engineer has less information and 3.5 fewer years of experience working on an Accused Instrumentality. *Id*.

Second, a Product Manager whose work relates to ads in the Snapchat application is also based in Austin, Texas. *Id*. ¶ 27. He initially joined Snap as a remote employee. *Id*. He does not have any direct reports and his manager works in CDCA. *Id*. He does not write source code and he is not responsible for the execution or implementation of any technical components of the Accused Instrumentalities. *Id*. This product manager travels to Snap's California offices on a regular basis, yet no Snap engineers travel to the Austin, Texas office to meet with him. *Id*.

Finally, a junior data scientist that Snap initially hired as an intern works at Snap's Austin office. *Id*. ¶ 28. This data scientist currently analyzes if the information that Snap receives from third parties is formatted wrong or otherwise incorrect. *Id*. Ms. Ouyang serves as his mentor and helped train him. *Id*. Compared to Ms. Ouyang, this junior data scientist has significantly less historical and relevant information relating to the Accused Instrumentalities. *Id*. ¶¶ 18, 28

Snap does not anticipate calling any of these three individuals as witnesses at trial.

### D. The Locations of Relevant Third-Party Witnesses Favors CDCA.

In addition to Mr. Goyal, multiple other relevant third parties are located in California, including inventors of prior art. Specifically, Brendan Walsh (San Diego, CA); Curtis Ling (Carlsbad, CA); Arthur P. Rascon (Santa Clarita, CA), Thomas Emmanual Varghese (Los Altos Hills, CA); Jon Bryan Fisher (Belvedere Tiburon, CA); Don Bosco Durai (Fremont, CA); Nathaniel Thurston (Oakland, CA); David L. de Heer (Woodside, CA); Ronald Martinez (San

Francisco, CA); Marc Davis (San Francisco, CA); Phillip Y. Goldman (Los Altos, CA); Michael A. Killianey (San Carlos, California); Daniel J. Zigmond (Palo Alto, CA); Anand Madhavan (San Jose, CA); Arthur Van Hoff (Menlo Park, CA); James Barton (Los Gatos, CA) and others, who invented and patented relevant prior art are located in California, some in CDCA. Combs Decl. ¶¶ 5-12. Relevant third parties related to system prior art are also located in California—including Google who acquired DoubleClick (a popular prior art system). *Id.* ¶ 13.

## III. LEGAL STANDARD

"For the convenience of parties and witnesses, [and] in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). "The preliminary question under § 1404(a) is whether a civil action 'might have been brought' in the destination venue." *In re Volkswagen of Am., Inc.*, 545 F.3d 304, 312–13 (5th Cir. 2008) ("*Volkswagen II*"). In evaluating convenience, courts weigh both private and public interest factors. *In re Volkswagen AG*, 371 F.3d 201, 203 (5th Cir. 2004) ("*Volkswagen I*"). The private interest factors are: "(1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious and inexpensive." *Id.* The public interest factors are: "(1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflicts of law or in the application of foreign law." *Id.* The plaintiff's forum choice is not a factor. *In re Nintendo*, 589 F.3d 1194, 1200 (Fed. Cir. 2009) (reversing and transferring from EDTX to WDWA).

## IV. ARGUMENT AND AUTHORITIES

CDCA is clearly more convenient than WDTX under both the private and public interest

factors. Where, as here, the "most witnesses and evidence [are] closer to the transferee venue with few or no convenience factors favoring the venue chosen by the plaintiff, the trial court should grant a motion to transfer." *In re Nintendo*, 589 F.3d at 1198.

### A. Venue is Proper in the Central District of California.

This action could have been brought in CDCA because Snap's principal place of business and global headquarters is there. Muralidharan Decl. ¶ 3; 28 U.S.C. § 1400(b); *In re Samsung Elecs. Co., Ltd.*, 2 F.4th at 1371, 1381 (Fed. Cir. 2021) (transferring case from WDTX to NDCA).

### B. The Private Interest Factors Strongly Favor Transfer.

#### *1. Attendance of Willing Witnesses Strongly Favors CDCA.*

The convenience of willing witnesses is "the single most important factor in [the] transfer analysis." *In re Juniper Networks, Inc.*, 14 F.4th 1313, 1318 (Fed. Cir. 2021) (reversing and ordering transfer from WDTX to NDCA). Here, it strongly favors transfer to CDCA. *In re Apple, Inc.*, 581 F. App'x 886, 889 (Fed. Cir. 2014) ("*Apple I*"); *In re Genentech, Inc.*, 566 F.3d 1338, 1343 (Fed. Cir. 2009).

The current Snap employees with the most relevant information are in CDCA or northern California, with the majority concentrated at Snap's headquarters in CDCA:

| Name | Relevance | Location |
|---|---|---|
| Murali Anagani | Engineer, coded an Accused Instrumentality | CDCA |
| Hooman Javaheri | Senior Engineering Manager, coded Accused Instrumentality | CDCA |
| Arun Muralidharan | Engineering Manager, coded Accused Instrumentality | CDCA |
| Ruxuan Ouyang | Senior Data Scientist for Accused Instrumentalities | CDCA |
| Houshmand Shirani-Mehr | Engineering Manager, coded Accused Instrumentality | Palo Alto |
| Blake Thielmann | Senior Finance Manager, oversees Snap's ad revenue | CDCA |
| Anirudh Venkatesh | Principal Engineer, manages Accused Instrumentality | CDCA |

*Supra* § II.B; Muralidharan Decl. ¶¶ 4, 6, 9–10, 14, 17–18, 23.[2]

[2] Mohit Goyal, a Snap now former employee, is also located in NDCA. Muralidharan Decl. ¶ 14.

Additionally, the overwhelming majority of Snap's employees with potentially relevant information are more than 1,000 miles away from this Court. *Id.* ¶ 30. *Supra* § II.B; Muralidharan Decl. ¶¶ 4, 6–17, Venkatesh Decl. ¶¶ 3, 7–8.

| Snap Team | # of Relevant Employees in CDCA | # of Other Relevant CA employees | CA Total |
|---|---|---|---|
| Signals & Measurements Team | 22 | 6 | 28 |
| Delivery Platform Team | 30 | 22 | 52 |
| Ads Quality Team[3] | 0 | 9 | 9 |
| Data Science Team | 9 | 1 | 10 |
| **Total** | 61 | 38 | 99 |

*Supra* § II.B; Muralidharan Decl. ¶¶ 8, 10, 11, 13, 16, 24; Venkatesh Decl. ¶¶ 3, 7-8. Engineers that are located outside of California are primarily based in Washington state, which is closer to CDCA than this District. *Supra* § II.B; Muralidharan Decl. ¶¶ 11–13, 16.

Flying from either Santa Monica, Palo Alto, or Seattle to this Court requires a significant amount of travel time because there are no direct flights. *Id.* ¶¶ 31–32. By contrast, Snap's employees in Santa Monica are only a car ride away from courthouses in CDCA, and Snap's employees in NDCA or Seattle can take a short, direct flight to Los Angeles. *Id.* ¶¶ 30–32.

To the extent that the named inventors are considered willing witnesses, their location in New York and Israel (*supra* § II.C) does not weigh against transfer because it is no less convenient for them to attend trial in CDCA than it is for them to attend trial in Midland-Odessa. *See In re Apple Inc.*, 979 F.3d 1332, 1341–42 (Fed. Cir. 2020) ("*Apple II*") (granting transfer from WDTX to NDCA). Moreover, there are direct flights from both New York and Israel to Los Angeles, California and no direct flights from either to Midland-Odessa. Combs Decl., ¶¶ 3–4.

Additionally, while Snap has three employees in Austin, none of whose work uniquely

[3] The numbers in this chart reflect the number of Ads Quality engineers whose work primarily relates to activity-based ads and audience targeting.

relates to the Accused Instrumentalities, they are likely to have inferior knowledge to Snap's witnesses identified above due to the seniority and experience of the individuals located in CDCA. Muralidharan Decl. ¶¶ 25–29. As such, none of these employees would likely be a witness at trial regardless of the venue, and in any event, their presence in Texas is greatly outweighed by the Snap California employees with far more extensive and relevant knowledge. Muralidharan Decl. ¶¶ 6–7, 9–10, 14, 17, 18, 23; *see, e.g.*, *In re Pandora Media, LLC*, No. 2021-172, 2021 WL 4772805, at *5 (Fed. Cir. Oct. 13, 2021) (convenience of witnesses "clearly favors transfer" despite four defendant employees in WDTX); *In re Adobe Inc.*, 823 F. App'x 929, 932 (Fed. Cir. 2020) (although defendant had employees in Austin "that may have relevant information, . . . [the transferee district] would still be more convenient"). Based on Plaintiff's current infringement allegations, Snap does not plan to call these three witnesses in the case.

### *2. Relative Ease of Access to Sources of Proof Strongly Favors CDCA.*

The ease of access to sources of proof in CDCA also strongly favors transfer. In patent cases, courts look to the location where the "allegedly infringing products were 'researched, designed, developed and tested[.]'" *In re Acer Am. Corp.*, 626 F.3d 1252, 1256 (Fed. Cir. 2010), as amended (Jan. 13, 2011). Here Snap's documents relating to the development and implementation of the Accused Instrumentalities were created in or are maintained within CDCA. Muralidharan Decl. ¶¶ 19–21; *In re Apple Inc.*, No. 2022-128, 2022 WL 1196768, at *4 (Fed. Cir. Apr. 22, 2022) ("*Apple IV*"). The research and development of the accused technology was also mainly conducted in California. Muralidharan Decl. ¶19; *see also* Venkatesh Decl ¶¶ 3, 7–9. Further, Snap's marketing and financial documents are primarily created in and maintained by Snap employees in CDCA. Muralidharan Decl. ¶ 22. Therefore, Snap's relevant sources of proof are primarily in CDCA.

Source code is particularly important and often recognized as a critical source of proof in

patent cases. *In re TikTok, Inc.*, 85 F.4th 352, 359 (5th Cir. 2023) (finding it was "relatively easier to access to the source code in the Northern District of California—where a majority of the engineering team [was] based"). The location of the source code also weighs in favor of transfer because the Snap engineers identified herein will collect it. Muralidharan Decl. ¶ 20–21; *see also* Venkatesh Decl. ¶¶ 5, 7–9. Conversely, there are no unique, relevant sources of proof in WDTX. *Juniper*, 14 F.4th at 1321; Muralidharan Decl. ¶¶ 19–22; Venkatesh Decl. ¶ 6. Thus, "with nothing on the other side of the ledger in [WDTX], [CDCA] [has] a comparative advantage with regard to the ease of access to the sources of proof located within that district." *Apple IV*, 2022 WL 1196768, at *4; *In re Apple Inc.*, No. 2021-181, 2021 WL 5291804, at *1 (Fed. Cir. Nov. 15, 2021) ("*Apple III*").

***3. Availability of Compulsory Process Strongly Favors CDCA.***

The ability to compel live trial testimony also favors transfer because CDCA can compel non-party witnesses to attend trial while WDTX cannot. *In re TikTok, Inc.*, 85 F.4th at 360. A court may subpoena a witness to attend trial only (a) "within 100 miles of where the person resides, is employed, or regularly transacts business in person"; or (b) "within the state where the person resides, is employed, or regularly transacts business in person." Fed. R. Civ. P. 45(c)(1)(A), (B). As the most tenured and knowledgeable employee on the Ads Quality team with information regarding activity-based ads and audience targeting, Snap anticipates calling Mr. Goyal at trial. Because Mr. Goyal has voluntarily ended his employment with Snap, he is now a third-party witness. Mr. Goyal lives in Northern California making him subject to Federal Rule of Civil Procedure 45(c)(1)(B). Additionally, at least sixteen individuals who invented and patented relevant prior art are subject to CDCA's subpoena power and can be compelled to testify live at trial. *Id.*; *see supra* § II.D. All sixteen of these individuals are outside of this Court's subpoena power, and could not be compelled to testify at trial in WDTX. *See Volkswagen II*, 545 F.3d at

316; *Apple I*, 581 F. App'x at 889. This factor strongly favors transfer to CDCA.

#### *4. All Other Practical Problems Are Neutral.*

When considering the private interest factors, courts also consider any practical considerations that would facilitate a trial, such as judicial economy. *Volkswagen II*, 545 F.3d at 315. Here, judicial economy is a neutral consideration in the transfer analysis transfer would not cause any substantial delay. *Parus Holdings, Inc. v. LG Elecs., Inc.*, No. 6:19-cv-00432-ADA, 2020 WL 4905809, at *6–7 (W.D. Tex. Aug. 20, 2020). Trial is not even set to occur until August 2027, and this Court has already transferred multiple of Plaintiffs' cases to California. Doc. 37; *Samsung Elecs.*, 2022 WL 17574082, at *12; *Meta Platforms*, 2022 WL 22881848, at *13.

### C. The Public Interest Factors Favor Transfer to CDCA.

#### *1. Local Interests Favor CDCA.*

Local interests strongly favor transfer to CDCA. This factor considers the parties' connections to the forum and any "significant connections between a particular venue and the events that gave rise to a suit." *Apple II*, 979 F.3d at 1345; *HD Silicon Sols. LLC v. Microchip Tech. Inc.*, No. W-20-cv-01092-ADA, 2021 WL 4953884, at *6 (W.D. Tex. Oct. 25, 2021).

Here, CDCA has a strong local interest. Snap is headquartered there, created the Accused Instrumentalities there, and most of Snap's witnesses are there. On the other hand, Snap's general presence in WDTX, which does not relate to the Accused Instrumentalities (Muralidharan Decl. ¶¶ 25-29), does not create a local interest. *Juniper*, 14 F.4th at 1320.

#### *2. Court Congestion Favors CDCA.*

The court congestion factor favors transfer to CDCA or is neutral. "When evaluating this factor, courts often look to the median interval time between filing a case to disposition in considering this factor." *Betty's Best, Inc. v. Yuyao Aggpo Elec. Tech. Co.*, No. 1:22-cv-1078-RP, 2022 WL 17724417, at *3 (W.D. Tex. Dec. 15, 2022). Here, as of September 8, 2025, the median

time from filing to disposition for civil cases is 7.6 months in WDTX and 3.9 months in CDCA and the median time from filing to trial is 33.4 months in WDTX and 27.8 months in CDCA.[4] This difference weighs in favor of transfer. *Betty's Best*, 2022 WL 17724417, at *3 & n.2 (granting transfer to CDCA and citing similar median time from filing to disposition ).

### *3. Familiarity with Governing Law and Conflicts of Law Is Neutral.*

Because there are no perceived conflicts of law, and both districts are equally qualified to apply patent law, the remaining two public factors are neutral. *See In re TS Tech USA Corp.*, 551 F.3d 1315, 1320–21 (Fed. Cir. 2008).

## V. CONCLUSION

For the reasons discussed above, the private and public interest factors strongly favor transferring this case to CDCA.[5] Five out of eight factors weigh in favor of transfer, and none weigh against it. Snap has, therefore, met its burden to show that CDCA is a "clearly more convenient" venue. *Volkswagen II*, 545 F.3d. at 315. Accordingly, Snap respectfully requests that the Court transfer this case to CDCA.

[4] Federal Court Management Statistics can be retrieved from https://www.uscourts.gov/data-news/reports/statistical-reports/federal-court-management-statistics/federal-court-management-statistics-march-2025 and downloaded directly at https://www.uscourts.gov/sites/default/files/document/fcms_na_distprofile0331.2025.pdf.

[5] While Snap believes CDCA is the proper transferee district, NDCA would also support the public and private factors. Moreover, both CDCA and NDCA are demonstrably more convenient than WDTX, which has no connections with the sources of proof or the parties.

Repectfully submitted,

*/s/ Jennifer H. Doan*

Jennifer H. Doan
Texas Bar No. 08809050
Mariah L. Hornok
Texas Bar No. 24113074
**HALTOM & DOAN**
2900 St. Michael Drive, Suite 500
Texarkana, TX 75503
Telephone: (903) 255-1000
Email: jdoan@haltomdoan.com
Email: mhornok@haltomdoan.com

**SHEPPARD, MULLIN, RICHTER & HAMPTON, LLP**
Steven G. Schortgen
Texas Bar No. 00794603
sschortgen@sheppardmullin.com
Jennifer Klein Ayers
Texas Bar No. 24069322
jayers@sheppardmullin.com
2200 Ross Avenue, 20th Floor
Dallas, Texas 75201
Telephone: 469.391.7400
Facsimile: 469.391.7401

**ATTORNEYS FOR DEFENDANT SNAP INC.**

## CERTIFICATE OF CONFERENCE

Pursuant to Local Rule CV-7(G), I certify that counsel for Defendant conferred with counsel for Plaintiff on September 9, 2025 and November 7, 2025, in a good-faith effort to resolve the matter presented in this motion. Counsel for Plaintiff stated that it opposes Defendant's motion.

*/s/ Jennifer H. Doan*
Jennifer H. Doan

## CERTIFICATE OF SERVICE

The undersigned certifies that a true and correct copy of the above and foregoing document has been served via the Court's ECF system on November 20, 2025.

*/s/ Jennifer H. Doan*
Jennifer H. Doan