**PUBLIC VERSION**

[redacted]

**UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**MIDLAND/ODESSA DIVISION**

| | |
|---|---|
| ALMONDNET, INC. and INTENT IQ, LLC,<br>Plaintiffs,<br>v.<br>SNAP INC.,<br>Defendant. | Case No. 7:25-cv-00181-DC-DTG<br>[redacted] |

**PLAINTIFFS' OPPOSITION TO SNAP INC.'S MOTION TO TRANSFER VENUE TO THE CENTRAL DISTRICT OF CALIFORNIA**

**PUBLIC VERSION**
[redacted]

## TABLE OF CONTENTS

**Page(s)**

I. INTRODUCTION ........ 1

II. BACKGROUND ........ 1

III. LEGAL STANDARD ........ 2

IV. ARGUMENT ........ 3

A. The Cost of Attendance for Willing Witnesses Does Not Support Transfer ........ 3

B. The Ease of Access to Sources of Proof Does Not Support Transfer ........ 9

C. The Availability of Compulsory Process Does Not Support Transfer ........ 11

D. Judicial Economy Weighs Against Transfer ........ 13

E. Court Congestion Weighs Against Transfer ........ 14

F. The Local Interest Factor Weighs Against Transfer ........ 14

G. Snap Admits That the Other Factors Do Not Support Transfer ........ 15

V. CONCLUSION ........ 15

**PUBLIC VERSION**
[redacted]

## TABLE OF AUTHORITIES

**Cases**

*AX Wireless LLC v. HP Inc.*,
No. 2:22-CV-00279-JRG-RSP, 2023 WL 8586672 (E.D. Tex. Dec. 11, 2023) ...................... 12

*CardWare Inc. v. Google LLC*,
No. 7:24-CV-00278-DC-DTG, Dkt. 95 (W.D. Tex. Aug. 7, 2025) ........................................ 12

*Def. Distributed v. Bruck*,
30 F.4th 414 (5th Cir. 2022) ........................................................................................ 2, 10

*In re Clarke*,
94 F.4th 502 (5th Cir. 2024) ........................................................................................ passim

*In re Meta Platforms, Inc.*,
No. 2023-143, 2023 WL 7118786 (Fed. Cir. Oct. 30, 2023) .................................................... 9

*In re Planned Parenthood Fed'n of Am., Inc.*,
52 F.4th 625 (5th Cir. 2022) .......................................................................... 2, 9, 11, 14

*In re TikTok, Inc.*,
85 F.4th 352 (5th Cir. 2023) .......................................................................... 3, 8, 11, 14

*MOV-ology LLC v. Oracle Corp.*,
No. 1:25-CV-246-ADA, Dkt. 42 (W.D. Tex. Oct. 10, 2025)........................................ 9, 10, 12

*Neural AI, LLC v. NVIDIA Corp.*,
No. 7:24-CV-00221-ADA-DTG, Dkt. 88 (W.D. Tex. Aug. 8, 2025) ...................................... 10

*Proxense, LLC v. Google LLC*,
No. W-23-CV-00320-ADA, Dkt. 63 (W.D. Tex. Jan. 23, 2024) ............................................ 12

*Rafqa Star, LLC v. Google LLC*,
No. 6-22-CV-01207-ADA, 2023 WL 6050593 (W.D. Tex. Sept. 15, 2023) ............................ 9

*Red Rock Analytics LLC v. Apple Inc.*,
No. 6:21-cv-00346-ADA, Dkt. 172 (W.D. Tex. Feb. 12, 2025) ............................. 9, 10, 12, 15

*Resonant Sys., Inc. v. Apple, Inc.*,
No. MO:23-CV-00077-ADA, 2024 WL 4346391 (W.D. Tex. Apr. 18, 2024)............. 8, 11, 12

*Vervain, LLC v. Kingston Tech. Co.*,
No. 1:24-CV-00254-ADA, Dkt. 56 at 12 (W.D. Tex. Jan. 28, 2025) ................................ 8, 11

*VoIP-Pal.com, Inc. v. Amazon.com, Inc. et al.*,
No. 6:20-CV-00272-ADA, 2022 WL 11455997 (W.D. Tex. Oct. 19, 2022).......................... 15

[redacted]

*VoIP-Pal.com, Inc. v. Verizon Commc'ns, Inc.*,
No. 6:21-CV-00672-ADA, 2022 WL 1785625 (W.D. Tex. June 1, 2022) .............................. 12

## I. INTRODUCTION

Defendant Snap Inc. ("Snap") has not met its significant burden to clearly establish good cause for transfer to the Central District of California ("CDCA"). Snap is a global corporation that touts having "offices around the globe," including in Austin—right here in the Western District of Texas ("WDTX"). Plaintiffs' witnesses are in New York and would find this District more convenient than the CDCA. And Snap's own evidence shows that several of its witnesses with relevant knowledge about the accused products, including witnesses in Texas, New York, and Massachusetts, would also find WDTX more convenient. During venue discovery, Plaintiffs were able to identify additional witnesses with relevant knowledge located in or closer to this District—witnesses that Snap failed to identify. In addition, during the deposition of Snap's primary declarant, Arun Muralidharan, it was revealed that his declaration identifying relevant witnesses was incomplete. Critically, Mr. Muralidharan did not conduct any investigation into the knowledge held by relevant witnesses in Texas. Mr. Muralidharan also admitted that his declaration omitted entire groups of relevant employees that work on the accused products. Snap's evidence is thus unreliable at best and should be given less weight.

Ultimately, Snap has failed to show that the marginal gain in convenience will be *significant* and will *actually* materialize if the case is transferred to CDCA, and its motion to transfer should be denied.

## II. BACKGROUND

This patent infringement case was filed on April 18, 2025. The amended complaint alleges infringement of U.S. Patent Nos. 10,321,198 ("'198 patent"), 8,677,398 ("'398 patent"), and 8,959,146 ("'146 patent"), which relate to novel internet / network-based advertising systems and methods. Dkt. 32 ¶ 1. On November 14, 2025, AlmondNet served preliminary infringement

[redacted]

contentions identifying the accused products for the ’198 and ’398 patents as including targeted advertising systems, services, and functionality provided by Snap’s computer systems that implement and provide Snapchat Ads,[1] including components such as Activity-Based Ads, Audience Targeting, Device Targeting, My AI, and Snap Pixel. Ex. 1 at 2–3. For the ’146 patent, AlmondNet’s infringement contentions allege induced infringement based on the Snap platform and related components that implement and provide ads from third party ad networks and advertisers. Dkt. 32 ¶¶ 31, 34; Ex. 1 at 3–4. Snap is incorporated in Delaware, has its principal place of business in Santa Monica, California. Snap also has an office in Austin, Texas. Plaintiffs are Delaware corporations with offices in Long Island City, New York.

## III. LEGAL STANDARD

When determining whether to transfer a case under 28 § U.S.C. 1404(a), the Court must weigh the private and public interest factors “to determine whether the destination venue is ‘clearly more convenient than the venue chosen by the plaintiff.’” *In re Planned Parenthood Fed’n of Am., Inc.*, 52 F.4th 625, 630 (5th Cir. 2022).[2] The party seeking to transfer the case has the burden to “adduce evidence and arguments that clearly establish good cause for transfer.” *Def. Distributed v. Bruck*, 30 F.4th 414, 433 (5th Cir. 2022). “At minimum, showing ‘good cause’ requires the movant ‘clearly to demonstrate’ that its chosen venue is ‘clearly more convenient.’” *In re Clarke*, 94 F.4th 502, 508 (5th Cir. 2024). That is, “a movant must show (1) that the marginal gain in convenience will be *significant*, and (2) that its evidence makes it plainly obvious—i.e., clearly demonstrated—that those marginal gains will *actually* materialize in the transferee venue.” *Id.*

[1] AlmondNet intends to supplement its preliminary infringement contentions to reflect that the targeted advertising functionality accused of infringement are those that implement and provide Snap’s “Ads Platform, including but not limited to components such as Snapchat Ads, Activity-Based Ads…” based on Mr. Muralidharan’s testimony. *See* Ex. 2 (Muralidharan Depo. Tr.) at 33:25–41:8.

[2] All quotations herein have been cleaned up.

Merely showing that "litigating would be more convenient for the defendant elsewhere is not enough to justify transfer." *Id.*

## IV. ARGUMENT

### A. The Cost of Attendance for Willing Witnesses Does Not Support Transfer

The cost of attendance for willing witnesses is the most important factor in the transfer analysis, and Snap has the burden to clearly demonstrate that the CDCA is *significantly* more convenient for the willing witnesses, and that these gains will *actually* materialize. *In re Clarke*, 94 F.4th at 508. Snap has not met this burden. To the contrary, several key witnesses would find the WDTX more convenient than the CDCA. And there are likely more that Snap failed to investigate and identify. On Plaintiffs' side, Roy Shkedi is the sole named inventor for the '398 and '146 patents, a named inventor on the '198 patent, and is Intent IQ's Chairman. Mr. Shkedi resides in New York, and therefore this District would be more convenient for him under the Fifth Circuit's 100-mile rule. *See In re TikTok, Inc.*, 85 F.4th 352, 361 (5th Cir. 2023).

There are also several potential Snap witnesses with knowledge regarding the accused products that are closer to WDTX than CDCA, or that would not find the CDCA significantly more convenient than WDTX. Snap's own motion makes clear that employees with knowledge regarding the accused products are located throughout the U.S., including in Texas and New York. Snap has an office in Austin, Texas, and at least one engineer on the Ads Quality team at Snap's Austin office; a product manager whose work relates to ads in the SnapChat application is also based in Austin; and a data scientist who "analyzes if the data that Snap's receives from third parties through Snap Pixel and Snap Conversion API" is in Austin as well. Muralidharan Decl. (Dkt. 44-1) ¶¶ 13, 26–28; *see also* Ex. 2 (Muralidharan Depo. Tr.) at 59:8–12 (Snap's declarant Arun Muralidharan confirming that the Austin-based engineer on the Ads Quality team is

**PUBLIC VERSION**
[redacted]

responsible for writing source code). Seven engineers on the Signals and Measurements team, which, according to Snap, is "primarily responsible for the research, development, and implementation of Snap Pixel, Snap Conversions API," are in New York, which is closer to Texas than California. *Id.* ¶¶ 7, 12. One engineer on the Signals and Measurements team is in Massachusetts, which is also closer to Texas than California. *Id.* ¶ 12. In addition, eight engineers on the Delivery Platform team work in New York. *Id.* ¶ 16.

AlmondNet was also able to specifically identify additional Snap employees who work on the accused products that are in Texas and New York, which further weighs against transfer. For example, David Caslin is a software engineer based in Maryland who is the founding engineer for Snap's My AI, which is accused in this case. Ex. 3. Benjamin Y. and Devonte M. are software engineers based in New York that work on ads monetization. Exs. 4, 5. Nish T. is yet another New York-based engineer that developed and implemented machine learning models to enhance user experience and content personalization. Ex. 6. Vinodhini Chandrasekaran and Cameron Johnson also work on relevant ads technology and are based in Texas. Exs. 7, 8. And James Kennedy is an advertising solutions lead that has been with Snap since 2017 and is based in Dallas. Ex. 9.[3]

While Snap claims that none of the Texas and New York employees are relevant to this case, Mr. Muralidharan did not actually speak with any of these employees to determine the scope of their knowledge and whether they may have unique knowledge not held by Snap's identified witnesses. *See, e.g.*, *id.* at 46:24–47:7, 48:4–50:1 ("Q. And you can't say one way or another whether their job function overlaps with Houshmand or anyone else in signals and measurement; right? A. Yeah. I can't because I don't know who they are."); 66:22–67:10, 73:1–3, 73:21–74:4,

[3] AlmondNet's counsel presented the LinkedIn profiles of these employees to Mr. Muralidharan at his deposition, but he was not familiar with them or their job functions. *See* Ex. 2 at 88:16–95:13; 109:18–115:11.

[redacted]

74:21–23, 82:15–83:1, 108:15–109:17, 112:14–25, 147:2–149:20. Nor was he able to say whether any of the 110 remote and contingent workers in Texas referenced in his declaration (¶ 25) work on the accused products. *Id.* at 82:15–83:1, 95:18–96:22, 102:5–9, 102:20–103:3, 104:5–27. Thus, Snap's assertion that the Texas and New York witnesses should be given no weight should be rejected. Snap did not actually investigate the extent of their knowledge, and Snap's assertion that the Austin employees are "*likely* to have inferior knowledge" (Mot. at 12 (emphasis added)) is pure speculation.

Indeed, it is evident from Mr. Muralidharan's deposition testimony that his "investigation" to determine relevant witnesses consisted of little more than reviewing the declaration drafted by his attorneys, and exchanging a few emails with a finance manager (Blake Thielmann) and one engineering manager on the Signals and Measurements team (Houshmand Shirani-Mehr), both of whom were identified in Mr. Muralidharan's attorney-written declaration. *Id.* at 12:7–8, 18:13–19:12, 44:8–23. And this is not a situation where the declarant was already so familiar with Snap's operations such that he did not need to conduct any additional investigation to determine the identities and locations of relevant witnesses. To the contrary, Mr. Muralidharan, who has only been working at Snap since 2022 (Muralidharan Decl. ¶ 4), had very little personal knowledge of anything outside the scope of his own team (Signals and Measurements).

For example, in addition to not knowing any of the job responsibilities of the Texas and New York employees reference above, Mr. Muralidharan did not even know that Snap has offices in Dallas and Washington D.C. (*see* Ex. 10), and thus did not investigate whether there may be employees with relevant knowledge there. Ex. 2 at 84:8–16, 85:10–86:6. He also did not investigate the scope of the job functions of any of the employees in Snap's Chicago and Toronto offices, which are closer to Texas than California. *Id.* at 84:25–85:9, 86:7–87:4. He was unable to

[redacted]

even estimate how many employees are in Snap's Austin, New York, Chicago, and Toronto offices. *Id.* at 87:5–9, 136:6–12.

Mr. Muralidharan also admitted at deposition that there are entire groups of employees that work on the accused products that are not mentioned at all in his declaration, such as the Ads Product Quality team, which supports all phases of Snap's ad platform; the solutions engineering team, which works on ads-related engineering (such as, e.g., the accused activity-based ads) and interfaces directly with Snap clients; and the business/demand platform team, which builds and maintains Snap's Ads Manager and Ads APIs that allow advertisers to create ads on Snap's platform and are specifically involved in setting up at least the accused activity-based ads. Ex. 2 at 23:10–24:4, 27:1–17, 36:23–39:4, 64:15–65:19, 103:17–104:4. Mr. Muralidharan did not know where any of these team members were located. *Id.* at 40:19–24; 54:3–56:5. Notably, at least one engineering manager on the solutions engineering team, Chen Guo, is in Austin. Ex. 11; Ex. 2 at 108:15–109:17, 126:14–127:2 (Mr. Muralidharan confirming that Chen Guo works on the engineering solutions team but that he did not speak with him). Cameron Johnson of Forney, Texas is an Ad Product Quality analyst and has been with Snap since 2019. Ex. 8; Ex. 2 at 113:1–25. It is likely there are more relevant witnesses in or closer to Texas that the attorneys who drafted Mr. Muralidharan's declaration failed to identify, and that Mr. Muralidharan's minimal investigation failed to discover.

As yet another example, while Mr. Muralidharan's declaration refers to data scientists that work with the Signals & Measurements and Ads Quality engineering teams, he inexplicably did not identify (or investigate) data scientists that work with the delivery platform and business/demand platform teams. Muralidharan Decl. ¶ 24; Ex. 2 at 64:15–65:17. When asked why he did not mention these data scientists in his declaration, Mr. Muralidharan stated: "I'm not

[redacted]

sure. I don't know." *Id.* at 66:4–6.

Mr. Muralidharan's declaration also identifies Mr. Shirani-Mehr as "one of the original engineers" responsible for the design, development, and implementation of the system that receives and processes information that third parties send to Snap through Snap Pixel and Snap Conversions." Muralidharan Decl. ¶ 10. But he made no attempt to investigate any other "original engineers" of the system:

> Q. Do you know if there are any other original engineers that coded the system?
>
> A. I can't say for sure, but I would have – I would guess so, yes. It – it's usually never just one engineer.
>
> Q. Okay. And you don't know who they are; right?
>
> A. No.
>
> Q. And you don't know where they're located; right?
>
> A. No. And I don't even know if they are with Snap anymore, for that matter.

*Id.* at 45:11–23; *see also id.* at 140:13–19, 143:14–18.

Further, while Mr. Muralidharan's declaration identifies Mohit Goyal as "the most tenured and knowledgeable" Ads Quality engineer (Muralidharan Decl. ¶ 14), he admitted at deposition that he has no knowledge of what aspects of the source code Mr. Goyal has worked on, and he has no knowledge of what aspects of the source code the Ads Quality engineer in Austin (Mr. Rikin) has worked on. *Id.* at 62:4–11, 63:11–17. In fact, Mr. Muralidharan did not speak with *any* engineers on the Ads Quality team, and thus his and Snap's representation that Mr. Goyal is the most knowledgeable witness is baseless and should be given little if any weight.

Mr. Muralidharan's declaration also identifies Ruxuan Ouyang "one of the original data scientists that worked with the Signals & Measurements engineering team" (Muralidharan Decl. ¶ 18), but he made no attempt to identify, much less speak with, any of the other "original data

[redacted]

scientists" to determine their knowledge. Ex. 2 at 72:5–16.[4]

Snap's heavy reliance on the availability of direct flights to Los Angeles versus Midland-Odessa should be rejected. Fifth Circuit precedent holds that when "the transferee venue is more than one hundred miles from the transferor," "the factor of inconvenience borne by witnesses positively and linearly scales with the additional *distance* they must travel." *Clarke*, 94 F.4th at 514; *see also In re TikTok, Inc.*, 85 F.4th 352, 361 (5th Cir. 2023) ("additional distance means additional travel time" and expenses). Under this 100-mile rule, distance serves as a straightforward proxy for convenience while avoiding unfairly penalizing courts in locations without major airports. When properly applying the Fifth Circuit's 100-mile rule, the numerous witnesses in Texas, New York, and Massachusetts with relevant knowledge strongly weigh against transfer.

Snap's table on page 11 of its motion which simply provides a tally of employees on various teams in California should be given no weight. As explained by this Court, it is improper to simply "tally[] the number of witnesses available in each forum to check the score." *Resonant Sys., Inc. v. Apple, Inc.*, No. MO:23-CV-00077-ADA, 2024 WL 4346391, at *9 (W.D. Tex. Apr. 18, 2024); *Vervain, LLC v. Kingston Tech. Co.*, No. 1:24-CV-00254-ADA, Dkt. 56 at 12 & n.49 (W.D. Tex. Jan. 28, 2025) (unidentified witnesses should be given no weight). The movant must provide sufficient information to allow the court to assess the "relevance and materiality of the information the witness may provide." *Resonant*, 2024 WL 4346391, at *9. Snap has not even done this for the witnesses it actually identified. The table at page 10 of its motion simply lists the

[4] The investigation of Snap's other declarant, Anirudh Venkatesh, was also shown to be unreliable. For example, Mr. Venkatesh admitted at deposition that he did not speak with *anyone* other than his attorneys, and that the HR records provided to him included the location of Snap's employees in California and Seattle, but did not include employees in New York, Chicago, Toronto, or Texas. Ex. 12 (Venkatesh Depo. Tr.) at 10:13–12:11.

[redacted]

witnesses' names, and provides their job titles and vague, generalized descriptions of their "relevance," such as "coded an Accused Instrumentality" and "manages Accused Instrumentality." This is insufficient to allow the Court to assess whether these witnesses have material knowledge and will actually be necessary for trial.

In sum, Snap's discussion of this factor simply amounts to cherry-picked tallying of witnesses in California, which is insufficient to meet its burden to show that the gain in convenience for the willing witnesses who are *actually* expected to testify at trial will be significant. *See Red Rock Analytics LLC v. Apple Inc.*, No. 6:21-cv-00346-ADA, Dkt. 172 at 11 (W.D. Tex. Feb. 12, 2025) (defendants' failure to present "any strong indications for why each of these witnesses are likely to appear in this trial … severely reduces the weight that many of the witnesses… carry for consideration of this factor"); *In re Meta Platforms, Inc.*, No. 2023-143, 2023 WL 7118786, at *1 (Fed. Cir. Oct. 30, 2023) (holding that this Court "plausibly concluded that Meta failed to establish that the willing witness factor favored transfer" where Meta "broadly asserted that relevant Meta employees are located in California and Washington state").

In addition, if any of Snap's CDCA employees actually do need to travel to this District for trial, the fact that Snap has an Austin office would "mitigate interruptions to their workflow and, as a result, would reduce the cost of attendance for these witnesses." *Red Rock*, slip op. at 10. Thus, the mere fact that Snap has a large presence in CDCA "is not dispositive and does not carry weight." *Id.*; *see also MOV-ology LLC v. Oracle Corp.*, No. 1:25-CV-246-ADA, Dkt. 42 at 6–7 (W.D. Tex. Oct. 10, 2025) (because Oracle has a "global presence," "NDCA is not… more convenient on that factor"). Snap has failed to meet its burden to show that CDCA is *significantly* more convenient for the willing witnesses, and this factor does not support transfer.

**B. The Ease of Access to Sources of Proof Does Not Support Transfer**

[redacted]

"When most of the evidence is electronic and equally accessible in either forum, this factor weighs against transfer." *Rafqa Star, LLC v. Google LLC*, No. 6-22-CV-01207-ADA, 2023 WL 6050593, at *8 (W.D. Tex. Sept. 15, 2023) (citing *Planned Parenthood*, 52 F.4th at 630); *see also Neural AI, LLC v. NVIDIA Corp.*, No. 7:24-CV-00221-ADA-DTG, Dkt. 88 at 4 (W.D. Tex. Aug. 8, 2025) ("This factor fails to support transfer because most of the evidence is electronic and can be accessed from either district."). And here, Snap cannot point to any evidence that is not electronic and that is not equally accessible from its Austin offices as in California. Indeed, Snap makes no claim that its relevant documents are more accessible in California than Texas. *See* Mot. at 12 (asserting that documents were "created in or are maintained within CDCA"); Ex. 2 at 134:14–135:4 (Mr. Muralidharan not aware of any location-based access restrictions).

Mr. Muralidharan also confirmed at deposition that source code can be accessed from anywhere in the U.S. Ex. 2 at 128:20–24. He was unable say for certain whether any Texas employees have access to relevant source code, and admitted that at least one employee likely does. *Id.* at 125:2–22, 126:14–127:11. *See MOV-ology*, slip op. at 6 (weighing factor against transfer where documents were accessible from defendant's Austin office). To the extent that the location of the servers housing the documents and source code is relevant, Mr. Muralidharan admitted he has no idea where the servers are and made no attempt to investigate these facts. Ex. 2 at 129:9–130:5. It is thus entirely possible that Snap's documents and source code are not stored in CDCA at all. *See Red Rock*, slip op. at 14–15 (finding no "compelling argument for an increased ease of access to sources of proof" where defendants did not specify what information is stored in the Northern District of California "compared to servers in other locations," and there was also "no showing by the Defendants that documents from any of Defendants' servers would not be accessible in WDTX").

[redacted]

Snap's assertion that "research and development of the accused technology was … mainly conducted in California" (Mot. at 12) is insufficient to support transfer. As held by the Fifth Circuit, this factor "requires an *actual showing* of the existence of relevant sources of proof, not merely an expression that some sources likely exist in the prospective forum." *Def. Distributed*, 30 F.4th at 434; *Resonant*, 2024 WL 4346391, at *4 ("[F]ailure to identify with specificity as to the documents and the location of the documents is a failure of the moving party to meet its burden on transfer."). Snap has not met its burden, as it has failed to investigate where relevant sources of proof are actually located. And in any event, the location of documents is largely irrelevant given that Snap's documents are all electronic and are equally accessible in Texas.

Snap has not met its burden to show that ease of access to sources of proof would make transfer to the CDCA clearly more convenient.

**C. The Availability of Compulsory Process Does Not Support Transfer**

The availability of compulsory process does not support transfer. As an initial matter, Snap has not shown that any of the identified third parties would be unwilling to testify at trial. Accordingly, these third parties should be given less weight. *See TikTok*, 85 F.4th at 360 (quoting *Planned Parenthood*, 52 F.4th at 630–31) (holding that the district court did not abuse its discretion in finding this factor neutral where petitioners did not identify any unwilling non-party witnesses because "the availability of compulsory process receives less weight when it has not been alleged or shown that any witness would be unwilling to testify"); *Vervain*, slip op. at 10 (finding factor neutral where neither party had "alleged or shown" that a non-party witness is unwilling to testify).

Snap's reliance on Mohit Goyal is deficient for other reasons too. While Snap asserts that Mr. Goyal "*was* the most tenured and knowledgeable" regarding Ads Quality (Mot. at 6 (emphasis added)), Snap does not claim that there are no current employees (i.e., willing witnesses) with the

[redacted]

same knowledge. It is unlikely that Mr. Goyal, a former employee, holds unique knowledge that was never passed on to others before his departure from Snap. Indeed, while Mr. Muralidharan did not know specifically what aspects of the source code Mr. Goyal wrote, he admitted that Mr. Goyal and Mr. Rikin, a current Ads Quality engineer based in Austin, *worked on the same source code*. Ex. 2 at 58:9–25, 60:10–61:21 ("Q. Are they writing the exact same source code? Are they working on the exact same part of the source code within ads quality? A. Yes. I – I would say they work on the same code base, yes."). It thus appears that Mr. Goyal does not hold unique knowledge at all, and compulsory process is unnecessary. Snap can have Mr. Rikin and/or other current Ads Quality employees testify at trial regarding this functionality.

Snap's tallying of 16 prior artists should be rejected. As an initial matter, Snap has not yet served its invalidity contentions, and does not represent that it intends to rely on the referenced prior art in this case, much less that it intends to call these witnesses to testify at trial.[5] *See CardWare Inc. v. Google LLC*, No. 7:24-CV-00278-DC-DTG, Dkt. 95 at 7 (W.D. Tex. Aug. 7, 2025) (noting "serious credibility concerns about placing any reliance" on prior art witness where defendant did not rely on such prior art in its invalidity contentions). Indeed, this Court has previously noted that prior art witnesses "rarely appear at trial." *VoIP-Pal.com, Inc. v. Verizon Commc'ns, Inc.*, No. 6:21-CV-00672-ADA, 2022 WL 1785625, at *4 (W.D. Tex. June 1, 2022); *see also AX Wireless LLC v. HP Inc.*, No. 2:22-CV-00279-JRG-RSP, 2023 WL 8586672, at *3 (E.D. Tex. Dec. 11, 2023) ("identification of several prior artists is given little weight"); *MOV-ology*, slip op. at 6 ("While prior art witnesses may be outside the district, those witnesses do not compel transfer because it has not been shown they are likely to testify and would be unwilling."); *Red Rock*, slip op. at 17 ("It is unlikely that any of the prior art inventors or paper authors who

---

[5] This also presents fairness issues, as AlmondNet is unable to investigate whether there are prior artists within the subpoena power of this Court.

were hand-picked by the Defendants will testify at trial.”).

This Court has squarely rejected the type of “tallying” approach Snap takes here. *Resonant*, 2024 WL 4346391, at *9; *see also Proxense, LLC v. Google LLC*, No. W-23-CV-00320-ADA, Dkt. 63 at 6–7 (W.D. Tex. Jan. 23, 2024). Snap fails to show that any of the identified third-party witnesses would materialize at trial, and therefore has not met its burden to show that the availability of compulsory process would make transfer to the CDCA clearly more convenient.

### D. Judicial Economy Weighs Against Transfer

This district has substantial experience with AlmondNet, its patents, including the patents-in-suit, and similar network-based advertising systems and methods at issue in this case over four distinct cases.[6] And with respect to this specific Court, AlmondNet has three co-pending lawsuits concerning overlapping patents: *AlmondNet, Inc. v. Adobe Inc.*, No. 7:25-cv-00487-DC-DTG (’146 patent); *AlmondNet, Inc. et al v. Ozone Project Ltd.*, No. 7:25-cv-00411-DC-DTG (’398 and ’146 patents); and *Intent IQ, LLC v. MNTN, Inc.*, No. 7:25-cv-00246-DC-DTG (’398 patent).

This Court will thus be resolving disputes with respect to the asserted patents regardless of whether this case is transferred. In contrast, AlmondNet has *zero* cases concerning the asserted patents in CDCA. It would be more efficient to keep the cases together, rather than transfer this case to a district unfamiliar with AlmondNet and its patents. Snap’s assertion that “this Court has already transferred multiple of Plaintiffs’ cases to California” (Mot. at 14) fails, as the referenced *Samsung* and *Meta* cases were transferred to the NDCA. There are no efficiencies to be gained

[6] In *AlmondNet, Inc. v. Microsoft Corp.*, No. 6:21-cv-00897-ADA, the parties litigated the case all the way through dispositive motions briefing and the court issued a claim construction order construing terms of AlmondNet and related patents. This district also presided over the jury trial in *AlmondNet, Inc. v. Amazon.com, Inc.*, No. 6:21-cv-00898-ADA, and construed AlmondNet and related patents in that case as well. In addition, this district is currently presiding over a case involving the ’445 patent: *AlmondNet, Inc. v. Amazon.com, Inc.*, No. 6:24-CV-00234-RP (stayed pending IPR), and presided over a case involving the ’445 patent and ’210 patent that was voluntarily dismissed due to settlement: *Datonics LLC v. Oracle Corp.*, No. 7:25-cv-00059-ADA.

from transferring this case to CDCA. This factor weighs against transfer.

**E. Court Congestion Weighs Against Transfer**

Court congestion is "speculative" and "alone cannot be dispositive." *In re Clarke*, 94 F.4th at 515. Thus, while the relevant federal court management statistics show that on average, all civil cases have a marginally faster disposition time in CDCA, this should be given little weight. Snap must show that the marginal gain in convenience will be *significant* and will *actually* materialize. That CDCA's average time from filing to disposition time is three months faster than this District is certainly not significant. Nor do these general statistics prove that *this Court* is unable to bring *this case* to trial (or other disposition) faster than CDCA—especially when considering the delays associated with transfer and having to get an entire new schedule in place. *See TikTok*, 85 F.4th at 363 ("This factor normally weighs against transfer when the case appears to be timely proceeding to trial before the transferee district."); *Planned Parenthood*, 52 F.4th at 631 (same).

Snap has not met its burden to show that court congestion would make transfer to the CDCA clearly more convenient. This factor is neutral.

**F. The Local Interest Factor Weighs Against Transfer**

In determining the relative local interest, courts "look not to the parties' significant connections to each forum … but rather the significant connections between a particular venue and the events that gave rise to a suit." *TikTok*, 85 F.4th at 364. Because "the local interest analysis is a public interest factor," the "inquiry is concerned with the interest of *non-party citizens* in adjudicating the case." *Clarke*, 94 F.4th at 511. Accordingly, the mere fact that Snap is headquartered in CDCA is irrelevant.

Regarding design and development, Mr. Muralidharan's declaration states that "[t]o Snap's knowledge, its research, development, and implementation of the technological systems that I have

described in my Declaration was conducted primarily at Snap's Santa Monica headquarters and Snap's Palo Alto office." Muralidharan Decl. ¶ 20. This is insufficient to support transfer, as Snap does not state what proportion of design and development took place in Santa Monica versus Palo Alto, which is in the NDCA, not CDCA. Snap also fails to state where other design and development occurred. Ex. 2 at 136:16–137:2 (Mr. Muralidharan admitting he did know where else design and development took place). *See Red Rock*, slip op. at 24 (weighing factor neutral because it was "unclear from the Defendant's briefing how much of the research, design, and development of the Accused Products actually occurred in NDCA compared to elsewhere").

Mr. Muralidharan did confirm, however, that at least some source code for the accused products is written by employees in Austin. Ex. 2 at 58:9–59:12, 126:14–127:11. Therefore, contrary to Snap's assertions, this District does have a local interest in this case. Mr. Muralidharan also admitted that there are entire groups of employees that work on the accused products that were not mentioned in his declaration, and thus Snap's representation that CDCA has a stronger local interest is unreliable. *Id.* at 23:10–24:4, 27:1–17, 36:23–39:4, 64:15–65:19.

Ultimately, Snap has not met its burden to show that the local interest in CDCA is significantly more than this District. This factor is neutral. *See VoIP-Pal.com, Inc. v. Amazon.com, Inc. et al.,* No. 6:20-CV-00272-ADA, 2022 WL 11455997, at *9 (W.D. Tex. Oct. 19, 2022) (finding this factor neutral where "both the NDCA and the WDTX have valid local interests because research, design, and development of accused technology occurred in both districts").

### G. Snap Admits That the Other Factors Do Not Support Transfer

Snap admits that the remaining factors are neutral and do not support transfer.

## V. CONCLUSION

For the foregoing reasons, Snap's motion to transfer should be denied.

Dated: December 24, 2025

Respectfully submitted,

/s/ *Reza Mirzaie*

Reza Mirzaie
CA State Bar No. 246953
Marc A. Fenster
CA State Bar No. 181067
Brian D. Ledahl
CA State Bar No. 186579
Adam S. Hoffman
CA State Bar No. 218470
James A. Milkey
CA State Bar No. 281283
Philip X. Wang
CA State Bar No. 262239
Susan Y. Tull
D.C. Bar No. 992644
James Tsuei
CA State Bar No. 285530
Jonathan Ma
CA State Bar No. 312773
Joshua M. Scheufler
TX State Bar No. 24123406
Daniel B. Kolko
CA State Bar No. 341680
**RUSS AUGUST & KABAT**
12424 Wilshire Boulevard 12th Floor
Los Angeles, California 90025
Tel: 310-826-7474
Fax: 310-826-6991
rmirzaie@raklaw.com
mfenster@raklaw.com
bledahl@raklaw.com
ahoffman@raklaw.com
jmilkey@raklaw.com
pwang@raklaw.com
stull@raklaw.com
jtsuei@raklaw.com
jma@raklaw.com
jscheufler@raklaw.com
dkolko@raklaw.com

*Attorneys for Plaintiffs*
*AlmondNet, Inc. and Intent IQ LLC*

**PUBLIC VERSION**

[redacted]

## CERTIFICATE OF AUTHORIZATION TO FILE UNDER SEAL

I hereby certify that the foregoing document is authorized to be filed under seal pursuant to the Protective Order entered in this case.

*/s/ Reza Mirzaie*
Reza Mirzaie

## CERTIFICATE OF SERVICE

I hereby certify that on December 24, 2025 I caused the foregoing to be electronically filed with the Clerk of the Court for the Western District of Texas under seal, and the counsel of record who are deemed to have consented to electronic service are being served on with a copy of this document via electronic mail.

/s/ *Reza Mirzaie*
Reza Mirzaie